UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

TERESA L. PATTERSON,        )
   Plaintiff,              )
                            )
v.                          )     Case No: 1:13-CV-72
                            )     Collier/Carter
CAROLYN W. COLVIN,          )
Acting Commissioner of Social Security, )
   Defendant               )

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of plaintiff's motion for judgment on the pleadings (Doc. 8) and defendant's motion for summary judgment (Doc. 10).

For the reasons stated herein, I **RECOMMEND** the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

Plaintiff's Age, Education, and Past Work Experience

Plaintiff had a high-school education, and was 57 years old at the time of her March 6, 2012 hearing (Tr. 144,152). Plaintiff alleged disability from rheumatoid arthritis, hepatitis C, fibromyalgia, major depression and degenerative disc disease of the cervical spine (Tr. 133, 30, and 369). Plaintiff began treatment with Dr. Brackett, a rheumatologist, in July of 2010 for joint

1

joint pain in her hands. Dr. Brackett initially diagnosed Plaintiff with osteoarthritis and polyarthralgia (Tr. 362). By 2011 he changed his diagnosis to Fibromyalgia and began treating her with injections (Tr. 354).

## Applications for Benefits

Plaintiff protectively filed an application for Disability Insurance Benefits and a period of disability on April 27, 2011, alleging she became disabled on January 7, 2011 (Tr. 14, 243-44). After a hearing on March 6, 2012 (Tr. 14, 144-70), the ALJ issued a decision on March 16, 2012, finding Plaintiff not disabled (Tr. 128-43). The Appeals Council denied Plaintiff's Request for Review on January 10, 2013 (Tr. 1-7). Plaintiff has exhausted her administrative remedies and timely filed a civil action in this Court. The case is ripe for review under 42 U.S.C. § 405(g).

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the

Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. At the same time, "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984); Hurst, 753 F.2d at 519 (6th Cir. 1985). The substantial evidence standard allows allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

As the basis of the decision of March 16, 2012 that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since January 7, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following "severe" impairments: Rheumatoid arthritis; hepatitis C; and fibromyalgia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the

residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with only occasional kneeling and crawling; no climbing of ladders, ropes, or scaffolds; only frequent use of the bilateral upper extremities; and avoiding hazards.

6. The claimant is capable of performing past relevant work as an office manager (sedentary and skilled), billing clerk (sedentary and skilled), and customer service representative-telephone (sedentary and semi-skilled. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The Claimant has not been under a disability, as defined in the Social Security Act, from January 7, 2011, through the date of this decision (20CFR 404.1520(f)).

(Tr. 133-139).

## Issue Presented

The following issues are raised in Plaintiff's Memorandum:

1) The ALJ erred by giving Dr. Brackett's opinion no weight, upon finding it inconsistent with his treatment records. The decision should be remanded because Dr. Brackett's opinion was consistent with his treatment records, which indicate positive objective findings of Plaintiff's manual restrictions and limitations, and supports a finding that Plaintiff is disabled.

2) The ALJ's decision requires reversal because the treating physician's opinion on Plaintiff's manual restrictions and limitations, combined with the ALJ's findings regarding her residual functional capacity, would cause Plaintiff to meet Medical Vocational Grid Rule 202.06, and

3) The Agency's decision should be remanded and a new hearing held for consideration of new and material evidence that supports a finding of disability.

## Review of Medical Evidence

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision

4

(Tr. 9-19) and in the parties' Memoranda. I will not repeat it here but will refer to relevant portions of it in the analysis section.

## Analysis

For reasons that follow, I conclude the Commissioner's decision is not supported by substantial evidence and remand under sentence four is the appropriate remedy. The ALJ's stated reasons for rejecting the opinion of the treating physician are not adequately supported looking at the record as a whole and the ALJ's credibility determination failed to sufficiently address reasons to discount Plaintiffs allegations of disabling pain. The ALJ's conclusion that Plaintiff is capable of a limited range of sedentary work is therefore not supported by substantial evidence. When the ALJ's findings are not supported by substantial evidence, or are legally unsound, the reviewing court should reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or . . . the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). I cannot say the evidence of disability is overwhelming and that no evidence exists on the other side, therefore I am recommending remand rather than reversal.

### The Treating Physician Rule

Plaintiff argues the ALJ erred by failing to give the treating physician, Dr. Brackett, more than minimal weight because his opinion was consistent with his treatment records, which records indicate positive objective findings of Plaintiff's manual restrictions and limitations. In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine plaintiffs only once. *See Kirk v. Sec'y of Health and Human Servs.,* 667 F.2d 524, 526 (6th Cir. 1981). In fact, pursuant to agency regulations, if the Commissioner finds "that a

5

treating source's opinion on the issue(s) of the nature and severity of [a plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §404.1527(d)(2) (2011). However, the ALJ is not always bound to accept the treating physician's opinion.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the so-called "treating physician rule," which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Blakley v. Commissioner,* 581 F.3d 399, 406 (6th Cir. 2009). The rationale behind the rule is that treating physicians are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence. 20 C.F.R. § 404.1527(d)(2). The ALJ must give a treating source opinion "controlling weight" if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Ibid.* Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still consider how much weight to give it; in doing so, the ALJ must take into account the length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairment(s), the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and any other relevant factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). *Friend v. Commissioner,* 375 Fed.Appx. 543, 550 (6th Cir. 2010).

6

Social Security claimants are entitled to "a careful evaluation of the medical findings . . . and an informed judgment . . .." *See* SSR 96-3p, 1996 WL 374181, at *2 (July 2, 1996). As part of any "careful evaluation" and "informed judgment," an ALJ is required to set forth a valid basis for rejecting the opinions of treating, examining, and non-examining sources. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

Social Security regulations require that the findings of the treating physician as to the severity of an impairment be accorded controlling weight if they are well-supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2002). The cited regulation acknowledges that more weight should be granted to the opinions of a treating source because:

> These [treating] sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.

(*Id.*)

Here, the ALJ's asserted reason for assigning Dr. Brackett's opinion "minimal weight" was that he found the opinion inconsistent with Dr. Brackett's treatment notes, and unsupported by objective, diagnostic findings (Tr. 138). However, as Plaintiff notes, Dr. Brackett's treatment treatment notes continuously cite positive objective findings for synovitis in both hands, Heberden's nodes in both hands, squaring and crepitus in both hands, and synovitis in both wrists (Tr. 362, 358, 354, 62, 58, and 54). Therefore, the restrictions and limitations opined by

7

Dr. Brackett are arguably consistent with his treatment notes and supported by some objective findings. Although the ALJ specifically took note of these findings, he contends that there are no positive, objective findings to support Dr. Brackett's opinion (Tr. 138). I also note that there is a diagnosis of Fibromyalgia in the reports of July 14, 2011 and February 14, 2012, which is a condition that does not have objective signs and can exist and cause potentially disabling pain in spite of full range of motion.

Fibromyalgia, or fibrositis as it is also referred to, presents unique challenges to the ALJ and the Commissioner because there are no objective medical tests which can assess the severity of the disease or even its very existence. In order to diagnose the disease, a physician must perform tests to rule out other diseases and rely upon subjective symptoms related to the physician by the patient. *See* footnote 1, *supra*. The Sixth Circuit in *Preston v. Sec'y of Health Health and Human Servs*., 854 F.2d 815 (6th Cir. 1988), discusses the anomalies of this disease:

> ... fibrositis causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances. In stark contrast to the unremitting pain of which fibrositis patients complain, *physical examinations will usually yield normal results--a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients*. The medical literature also indicates that fibrositis patients may also have psychological disorders. The disease commonly strikes between the ages of 35 and 60 and affects women nine times more than men.
>
> *Id.* at 817 (emphasis added.)
>
> Our task in reviewing this issue is complicated by the very nature of fibrositis. Unlike most diseases that can be confirmed or diagnosed by objective medical tests, fibrositis can only be diagnosed by elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue.

8

*Id.* at 818

The Sixth Circuit has revisited this issue in *Rogers v. Comm'r of Social Security*, 486 F.3d 234 (6th Cir. 2007. In *Rogers*, the Court again recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *Id.* at 243 (citing *Preston*, 854 F.2d at 820). As in both *Preston* and *Rogers*, the ALJ's decision here dismisses or minimizes plaintiff's fibromyalgia, found to be severe by her treating physician, a rheumatologist. As noted in *Preston* and *Rogers*, fibrositis patients manifest normal muscle strength and neurological reactions and have a full range of motion. The Court in *Preston* discussed fibromyalgia and notes that physical exams will usually yield normal results - a full range of motion, no joint swelling as well as normal muscle strength and neurological reactions. *Preston,* 854 F.2d at 817.

In this case, as Plaintiff argues, there are objective signs. In fact, Dr. Brackett provides objective evidence demonstrating significant abnormalities in the hands: x-rays of Plaintiff's hands and wrists, which showed narrowed joint spaces, erosions, and osteophytes; and clinical findings of pain, synovitis, Heberden's nodes, squaring, and crepitus in the hands/fingers, and synovitis in the wrists. In addition to these conditions, even though tests seem to rule out rheumatoid arthritis, Dr. Brackett's ultimate diagnosis moved from generalized osteoarthritis, site unspecified, on March 24, 2011 and on June 23, 2011 (Tr. 353, 395), to Fibromyalgia on July 14, 2011. In the July 14, 2011 visit, Plaintiff reported her pain as severe and Dr. Brackett noted 18 out of 18 positive trigger points, confirming the presence of Fibromyalgia, which he assessed as: "Fibromyalgia full blown and requesting injections" (Tr. 431, 433).

9

The Commissioner argues Dr. Brackett is inconsistent with the record as a whole and points to the June 12, 2011 opinion of Dr. Karla Montague-Brown, a non examining state agency physician, who in her report noted Dr. Brackett's normal range of motion findings. However the opinion of Dr. Montague-Brown, upon which the ALJ relied, was made prior to the first Fibromyalgia assessment of Dr. Brackett and prior to his disabling medical Source Statement of July 12, 2011. I agree with Plaintiff, that the opinion of a non-examining medical consultant cannot justify rejecting the opinion of a treating physician when the non-examining physician did not see all the medical records. Dr. Montague-Brown reviewed the file before the two medical evaluations of the treating physician found Fibromyalgia and before the treating source gave an opinion which was clearly disabling.

Plaintiff also argues the agency has no rational basis for rejecting Dr. Brackett's specific assessment of restrictions on use of the hands. Dr. Brackett had limited her to use of her hands for gross and fine manipulation only occasionally, or for a third of a normal workday (Tr. p. 401). In rejecting Dr. Brackett's opinion, the ALJ reasoned:

> Minimal weight is also assigned to Dr. Brackett's opinions . . . Dr. Brackett's opinions are inconsistent with his treatment notes showing painful, but full range of motion in the shoulders; *pain, synovitis, Heberden's nodes, squaring, and crepitus in the hands/fingers; recent synovitis in the wrists* . . .

Tr. at 138 (emphasis added).

Plaintiff insists the ALJ's reasoning is entirely illogical with respect to the hand limitations assessed by Dr. Brackett. The highlighted clinical findings—"pain, synovitis, Heberden's nodes, squaring, and crepitus in the hands/fingers; recent synovitis in the wrists"—wrists"—are all *positive* findings. Plaintiff argues that it may make sense to reject an assessment assessment of hand restrictions on grounds that treatment notes consistently show negative hand

10

findings on physical exam, but to reject an assessment of hand restrictions as inconsistent with treatment notes on grounds of six separate positive clinical findings—pain, synovitis, Heberden's nodes, squaring, and crepitus in the hands/fingers; recent synovitis in the wrists—wrists—makes no sense at all.

The Commissioner appears to contend that this is harmless error. Plaintiff's past relevant work is of a sedentary clerical/office nature. On Remand the ALJ should evaluate whether Plaintiff is as limited as Dr. Brackett opines, and determine whether someone limited to only occasional use of the hands for fine manipulation (if he concludes she is so limited) would be able to perform the writing, typing, and other clerical duties associated with the typical office job. Case law acknowledges that good use of the hands is a prerequisite for sedentary employment. *See Hurt v. Secretary*, 816 F.2d 1141 (6th Cir. 1987) (holding claimant who lacked bilateral manual dexterity following an arm injury could not perform a wide range of sedentary work). As a result, crediting only that portion of Dr. Brackett's assessment dealing with use of the hands, would result in a finding that Plaintiff is unable to perform her past relevant work.

Plaintiff also seeks remand under Sentence Six to consider new evidence. Plaintiff asserts an MRI obtained in the course of her treatment after the decision of the ALJ, revealed degenerative disc disease and stenosis of her cervical spine providing additional objective evidence to support Plaintiff's complaints. Because I am recommending remand, I will not address this issue. Plaintiff can present this additional evidence at the new hearing. An updated updated opinion should be obtained from the state agency physician after a review of the

11

additional medical evidence and Medical Source Statement of Dr. Brackett, and any other medical evidence available at the time of the rehearing.

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude the findings of the ALJ and the decision of the Commissioner that plaintiff can perform her past relevant work is not supported by substantial evidence when one looks at all of the evidence of the record. However, evidence of disability is not overwhelming and there is some evidence to support the Commissioner therefore remand is the appropriate remedy. Accordingly, I RECOMMEND[1] that:

1. Plaintiff's motion for judgment on the pleadings (Doc. 8) seeking judgment as a matter of law be GRANTED in PART to the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g).

2. Defendant's motion for summary judgment (Doc. 10) be DENIED.

3. The Commissioner's decision denying benefits be REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation (1) to further evaluate Plaintiff's allegations of pain in light of the fact that there are no objective medical or laboratory tests to diagnose Fibromyalgia or to measure the pain level it causes and in light of her history of treatment for Fibromyalgia and the presence of multiple trigger points and any other objective evidence and (2) to further evaluate the weight to be given the treating physician, in light of any other objective evidence which may further support his opinion and explain the cause of Plaintiff's alleged pain and limited movement.

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).